## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**DAN DOLAN,** a citizen of the State of
New Mexico, **THE NEW MEXICANS
FOR AN ECONOMIC RECOVERY
PAC,** a candidate support or opposition
committee and independent expenditures
committee, and **THE BERNALILLO
COUNTY REPUBLICAN PARTY,**

       Plaintiffs,

vs.

**DIANNA J. DURAN,** in her official
capacity as New Mexico Secretary of
State.
       Defendant.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS SEEKING
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through the undersigned counsel, THE BARNETT LAW

FIRM, P.A. (Colin L. Hunter), hereby submits their Complaint and state as follows

in support thereof:

## INTRODUCTION

1.    This is a civil rights action seeking declaratory and injunctive relief to

vindicate the right to freedom of speech in the conduct of political campaigns in

the state of New Mexico as well as the right to enjoy the equal protection of laws.

2.    The matching funds provisions the New Mexico Voter Action Act,

Sections 1-19A-1 TO 1-19A-17 NMSA 1978, (hereinafter the "VAA", with all

citations referring to the VAA unless otherwise noted) and the reporting requirements to implement the matching funds, violate the First and Fourteenth Amendments to the United States Constitution by forcing candidates and independent political groups to abide by arbitrary expenditure limits, thus infringing on and chilling protected political speech and association without a sufficiently compelling governmental reason for doing so and without being narrowly tailored to achieve any legitimate governmental interest.

3.      The VAA provides candidates the option of applying for public financing through the Public Election Fund.  The provisions of the VAA specifically cover the offices of the judicial branch of government subject to statewide election, and the Office of Public Regulation Commissioner.

4.      Moreover, the matching funds provisions of the VAA are overly content of the communication in question.

5.      The VAA's matching funds provisions also violate the guarantees of equal protection and due process of the law contained in the Fourteenth Amendment to the U.S. Constitution in that they discriminate against Plaintiffs in their exercise of a fundamental right—the right of free speech—by penalizing candidates who choose to not receive government funding under the VAA and by penalizing independent groups wishing to participate in the political process.

6.     Plaintiffs thus seek to have the VAA declared unconstitutional on its face and as applied to them and to have this Court permanently enjoin enforcement of the matching fund provisions of the Act.

7.     The Supreme Court's recent decisions in *Citizens United v. Federal Election Comm'n,* 130 S. Ct. 876 (2010), and *Davis v. Federal Election Comm'n,* 128 S. Ct. 2759 (2008), require this Court to strike down the VAA's matching funds trigger under the First and Fourteenth Amendments because it penalizes and deters free speech by forcing privately-financed candidates and their supporters to finance the dissemination of hostile political speech whenever they raise or spend private money, or when independent expenditures are made, above a "spending limit."

8.     *Citizens United* and *Davis* also require this Court to strike down the State's matching funds trigger under the First and Fourteenth Amendments because it regulates campaign financing in order to equalize "influence" and financial resources among competing candidates and interest groups, rather than to advance directly a compelling state interest in the least restrictive manner.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to vindicate rights violated under color of state law, and seek relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1988.  This Court has subject matter

jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Venue properly lies with this Court under 28 U.S.C. § 1391(b).

## PARTIES

10.    Plaintiff New Mexicans for an Economic Recovery Political Action Committee ("NMER PAC") is a registered political committee under New Mexico law.  NMER PAC will remain a registered political committee under New Mexico law and will accept contributions and make expenditures in support of candidates in state elections for the foreseeable future, including, but not limited to the 2012 and future state election cycle.

11.    Plaintiff Bernalillo County Republican Party is a registered county party under New Mexico law and will accept contributions and make expenditures in support of candidates in state elections for the foreseeable future, including, but not limited to the 2012 and future state election cycle.

12.    Plaintiff Dan Dolan is a resident of the City of Albuquerque.  Dolan made campaign contributions to candidates he supported in the 2000, 2002, 2004, 2006, 2008, and 2010 election cycles.  Dolan has not and will not in the future make campaign contributions to privately funded candidates he supports in elections where the privately funded candidate is opposed by a publicly funded candidate who is entitled to matching funds.

13.    Defendant Dianna J. Duran is the Secretary of State for the State of

New Mexico and is sued in her official capacity. As Secretary of State, Duran's

office is the repository for all campaign-finance reports filed pursuant to the VAA

and is responsible for adopting rules to administer the Act.

## FACTUAL ALLEGATIONS

14.    In 2003 New Mexico passed a public financing law for candidates

vying for a seat on the Public Regulation Commission. The system is funded by a

surcharge on the companies regulated by the commission. In 2007, New Mexico

added public financing for candidates for judgeships on the Court of Appeals and

Supreme Court of New Mexico.

15.    Section 1-19A-14 of the VAA provides:

When a certified or noncertified candidate has one or more opponents
who are certified candidates and the candidate's campaign finance
report or group of reports shows that the sum of the candidate's
expenditures and obligations made, or funds raised or borrowed,
whichever is greater, alone or in conjunction with expenditures made
independently of the candidate to influence the election on behalf of
the candidate, exceeds the amount distributed to an opposing certified
candidate, the secretary shall issue immediately to any opposing
certified candidate an additional amount equivalent to the excess
amount reported by the opposing candidate.

16.    Under the VAA, candidates seeking government funding obtain a

predetermined number of $5 contributions from constituents in order to qualify for

funding. These $5 contributions can be collected by individuals and, more likely,

by special-interest groups and organizations.

17.    The VAA does little to prevent corruption.  For instance, one of the VAA's stated purposes is to diminish the "influence of special-interest money" by removing the ability of such interests to make contributions to government funded candidates.  However, the VAA expressly permits those same special-interest groups to garner the same type of influence over government funded candidates by providing other services, such as collecting the requisite number of $5 contributions to qualify for government funding.

18.    The VAA is thus fatally under-inclusive: it acts to chill the speech of privately funded candidates without preventing government funded candidates from receiving assistance from large, organized interest groups, such as labor unions.  Moreover, the VAA permits this assistance without requiring disclosure of which special interest groups helped gather the $5 contributions.

19.    Thus, government funded candidates are not subject to the same disclosure requirements as privately funded candidates, creating the worst of all worlds. The VAA permits government funded candidates to be influenced by and beholden to special-interest groups, but without requiring public disclosure of such influence, and yet still be labeled as an "open and ethical" candidate.  In contrast, privately financed candidates must disclose all contributors, and yet suffer the implication of being "dirty" for refusing to accept government funding.

20.     Candidates who choose to fund their campaigns with private donations and, correspondingly, receive no government funding, must nonetheless adhere to specified contribution limits and extensive reporting requirements.

21.     The extensive and onerous reporting requirements exist for the sole purpose of notifying the Secretary of State when to trigger paying matching funds to government funded candidates. VAA § 9. The triggering of matching funds punishes traditionally financed candidates and results in privately funded candidates ceasing fundraising efforts, thus coercing privately supported candidates to abide by the VAA's strict expenditure limits.

22.     The VAA punishes candidates for choosing not to accept government funds and not agreeing to abide by the VAA's spending limits.

23.     An example of the VAA's punitive aspects is the fact that privately financed candidates neither receive matching funds when their campaigns are targeted by opposing independent expenditures, nor do independent expenditures that support government funded candidates count toward the government funded candidate's expenditure limit under the VAA.

24.     The VAA has punished candidates in the past for refusing to accept government subsidies and for refusing to promise to abide by the VAA's expenditure limits.

25.    The VAA will punish candidates in the future who chose to run a privately financed campaign, or it will coerce them to accept government funding despite the fact than many may have principled stance in opposition to welfare for politicians.

26.    By design and in operation, the VAA impermissibly tilts the playing field sharply in favor of government funded candidates by punishing their privately supported opponents for having refused government subsidies.

27.    The VAA requires the payment of matching funds to government funded candidates whenever an independent campaign expenditure is made that either i) opposes a government funded candidate with a privately funded opponent, or ii) supports a privately funded candidate with a government funded opponent.

28.    By comparison, independent expenditures made on behalf of government funded candidates are not restricted in any way, nor counted against the maximum amount of government funds that the government funded candidate may receive.  But when a privately supported candidate is the beneficiary of independent expenditures made to counter such unregulated independent expenditures, that independently and privately funded speech is immediately neutralized by the state in the form of government matching funds.

29.    Thus, the VAA protects and insulates government funded candidates from independent expenditures, but provides no such protection or relief to

privately financed candidates.  In operation, this provision does not equalize the relative financial resources of candidates, as it declares, but rather it tilts the playing field sharply in favor of government funded candidates.

30.     The VAA punishes privately funded candidates for receiving private support, improperly injects the state into the political process by increasing the financial resources of government funded candidates based on the privately funded candidate's exercise of his or her speech rights, harms independent groups by drowning out and neutralizing their speech and placing a chilling effect on the future exercise thereof.

31.     Section 14 of the VAA crowds out private donations to both privately funded candidates and independent groups because donors are reluctant to support candidates or messages when their act of support will trigger government funds to candidates with messages with which they disagree.

32.     The system created by the VAA treats independent expenditures differently depending on whether they favor government funded candidates (in which case they are entirely free of regulation) or privately supported candidates (in which case they are matched without a negative effect on the government funded candidate's spending limit).

33.     Privately supported candidates would be better off rebuffing such potential supporters.  Unfortunately for privately supported candidates this is not

possible, because independent expenditures are by definition not coordinated or solicited by the candidate who benefits from them. Whenever privately supported candidates receive unsolicited and uncoordinated support *that they do not control,* the system showers their government funded opponents with more taxpayer money *that their opponents do control.*

34.    The VAA requires the payment of matching funds to government funded candidates based on gross contributions to privately financed candidates during the election cycle. This goes beyond mere promotion of the government funding scheme and punishes privately supported candidates.

35.    Further, the VAA's reduction in the amount of permissible contributions makes it even more difficult for unsubsidized candidates to raise the amount that subsidized candidates automatically receive.

36.    The VAA is designed to increase the financial resources of government funded candidates when privately financed candidates speak, operates in a punitive and hence coercive manner against privately funded candidates, and will operate to penalize candidates in forthcoming city campaigns.

37.    The VAA declares on its face—and advances in operation—an improper state interest in equalizing the relative financial resources of candidates for public office in violation of the First and Fourteenth Amendments to the U.S. Constitution.

38.    The VAA and the rules promulgated to implement and enforce it coerce participation in the government financing scheme. While government funded candidates must submit expenditure reports that all candidates for public office must file, privately supported candidates with government funded opponents are subject to more stringent campaign-finance reporting requirements.

39.    The VAA's additional contribution expenditure reports are required for the sole purpose of facilitating the payment of additional government money to their government funded opponents, and serve no purpose in combating corruption or the appearance thereof.

40.    Thus, this reporting regime seeks not to promote the use of government funding but rather to equalize the relative financial resources of candidates, an improper state purpose that cannot justify the deprivation of Plaintiffs' rights under the First and Fourteenth Amendments. The reporting requirements also operate in an impermissibly coercive fashion by punishing the acceptance of private funding. Thus, the VAA places regulatory burdens on privately financed candidates for the sole benefit of government funded candidates.

41.    The Secretary of State enjoys sweeping powers to enforce these disproportionately burdensome reporting requirements. Because the filing requirements for privately funded candidates are so much more onerous than for

candidates taking government subsidies, the filing requirements have a profoundly negative impact on the on privately funded campaigns.

## COUNT I
## (FIRST AMENDMENT-INDEPENDENT EXPENDITURES)

42.    Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

43.    Under the First Amendment to the U.S. Constitution, *Buckley v. Valeo*, 424 U.S. 1 (1976), and its progeny, including *Randall v. Sorrell*, 126 S. Ct. 2470 (2006), *Federal Election Comm'n. v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007), and *Davis v. Fed. Election Comm'n.*, 128 S. Ct. 2759 (2008), a state or its subdivisions cannot place involuntary limits on independent expenditures made in the course of political campaigns, and cannot regulate or otherwise chill individuals or groups from exercising their right to freely speak.

44.    Section 14 through 16 of the VAA provides a direct public subsidy to government funded candidates whenever an independent expenditure is made that either i) opposes a government funded candidate with a privately funded opponent, or ii) supports a privately funded candidate with a government funded opponent. Therefore, the VAA amounts to an unconstitutional content-based regulation of political speech, in that it treats speech differently depending on whether it opposes or favors a government funded candidate.

45.     NMER PAC faces imminent injury to its First Amendment right to free political speech and free association as a direct result of this statutory scheme. The State's payment of matching funds—which, unlike an independent expenditure, is directly controlled by the government funded candidate—neutralizes independent speakers' voices and punishes the making of independent expenditures. The knowledge that making an independent expenditure opposing a government funded candidate will directly result in that candidate receiving a matching government subsidy creates a chilling effect on the Plaintiffs' exercise of protected speech, and imposes a climate of self-censorship that is inimical to our American heritage of unfettered political discourse.

46.     The VAA also violates the Plaintiffs' right to freedom of association by encroaching upon the ability of like-minded persons to pool their resources in furtherance of common political goals.  These provisions of the VAA are not narrowly tailored to serve a substantial, significant, or compelling legitimate governmental interest; are substantially overbroad because they discourage far more speech than is necessary to advance any governmental interest; penalize and, thereby, chill political speech; and constitute a content-based regulation of the fundamental rights of free speech and association.

## COUNT II
## (FIRST AMENDMENT-CANDIDATE COERCION/EQUALIZATION)

47.     Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

48.     Under the First Amendment to the U.S. Constitution, *Buckley v. Valeo*, 424 U.S. 1 (1976), and its progeny, including *Randall v. Sorrell*, 126 S. Ct. 2479 (2006), *Federal Election Comm'n. v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007), and *Davis v. Fed. Election Comm'n.*, 128 S. Ct. 2759 (2008), a government campaign financing scheme violates the right to free political speech where it goes beyond mere promotion of the voluntary use of public funding, and improperly injects the state into the political process by increasing the financial resources of government funded candidates based on the expenditures and contributions of privately financed candidates.

49.     Under these cases, the state may not coerce involuntary participation in a government campaign financing scheme by punishing those candidates who choose to run traditional, privately supported political campaigns rather than accept taxpayer subsidies and abide by the VAA's arbitrary expenditure limits.  Nor may the state coerce privately financed candidates to abide by such a scheme's expenditure limits for fear of being vastly outspent by their government funded opponent or opponents.

50. The VAA expressly provides for the "equal funding of candidates," and requires the payment of matching funds to government funded candidates whenever an independent campaign expenditure is made that either i) opposes a government funded candidate with a privately financed opponent, or ii) supports a privately financed candidate with a government funded opponent.

51. The VAA expressly aims to provide for the "equal funding of candidates" in statewide judicial elections and for the Office of Public Regulation Commissioner, and requires the State to pay matching funds to government funded candidates based on the gross amount of contributions received by their privately supported opponents after the primary election period, but does not make adequate adjustments for fundraising or other expenses incurred by the privately supported candidate. This provision is designed for the sole purpose of equalizing the relative financial resources of candidates, an improper state interest under *Buckley v. Valeo*, 424 U.S. 1 (1976). Moreover, this provision in its operation forces privately funded candidates to abide by the VAA's expenditure limits by ensuring that government subsidized candidates who receive matching funds will be able to vastly outspend the privately financed candidate. In operation, this provision guarantees that candidates who accept taxpayer funding receive more money than their privately financed opponents

52.   The VAA expressly intends for the "equal funding of candidates" in city elections by requiring the city to pay matching funds to government funded candidates based on expenditures made by their privately supported opponents. On its face, this section declares an improper state interest in equalizing the relative financial resources of candidates for public office.

53.   In its operation, it coerces participation in government funding of political campaigns and forces privately funded candidates to abide by the VAA's expenditure limits for fear of being vastly outspent by their government funded opponent or opponents. Such bureaucratic intermeddling in the political process violates the First Amendment to the U.S. Constitution, and is contrary to the U.S. Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976), and its progeny, including *Randall v. Sorrell*, 126 S. Ct. 2479 (2006), *Federal Election Comm'n. v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007), and *Davis v. Fed. Election Comm'n.*, 128 S. Ct. 2759 (2008).

54.   The VAA and rules promulgated to implement and enforce its provisions coerce participation in the government financing scheme and force candidates to abide by the VAA's strict expenditure limits by punishing privately supported candidates through the enforcement of stringent daily campaign finance reporting requirements. These reports are required for the sole purpose of facilitating the State's payment of additional taxpayer money to the government

funded opponents of privately funded candidates, and serve no purpose in combating corruption or the appearance thereof.

55.    This reporting regime seeks to equalize the relative financial resources of candidates, an improper state purpose that cannot justify the deprivation of Plaintiffs' rights under the First and Fourteenth Amendments.  The reporting requirements operate in an impermissibly coercive fashion by ensuring government funded candidates will receive equal or more funding than privately financed candidates, thus punishing the acceptance of private funding and forcing privately funded candidates to abide by the VAAs strict expenditure limits.

56.    The foregoing provisions, individually and cumulatively, are designed to equalize the relative financial resources of candidates, operate in a punitive and coercive manner against privately funded candidates, and will chill future political participation by unsubsidized candidates and independent groups.  The VAA creates an involuntary government campaign financing system that stacks the deck against privately funded candidates by increasing the financial resources of government funded candidates, thus sharply skewing the balance in favor of government funded candidates.

57.    The VAA coerces rather than promotes participation by actively and directly punishing privately funded candidates for having exercised their right

under the First Amendment to engage in political speech through a traditional, privately supported campaign.

58.     These provisions of the VAA are not narrowly tailored to serve a substantial, significant, or compelling legitimate governmental interest; are substantially overbroad because they discourage far more speech than is necessary to advance any governmental interest; penalize and, thereby, chill political speech; and constitute a content-based regulation of the fundamental rights of free speech and association.

59.     For reasons including but not limited to those stated in this Complaint, an actual dispute exists between Plaintiffs and Defendants, which parties have genuine and opposing interests, which interests are direct and substantial, and of which a judicial determination will be final and conclusive.

60.     Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions are unconstitutional, as well as such other and further relief as may follow from entry of such a declaratory judgment.

## COUNT III
## (EQUAL PROTECTION-INDEPENDENT EXPENDITURES)

61.     Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

62.     Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff
NMER PAC—and their contributors—have the right to enjoy the equal protection
of laws.

63.     The VAA sets up three classifications of independent expenditures:
(1) those statements made to the voting public against a government funded
candidate or in favor of the privately funded opponent of a government funded
candidate; (2) those statements that favor a government funded candidate; and (3)
those statements that oppose a privately funded candidate.  These three types of
political messages receive radically different treatment under the VAA.

64.     The State matches expenditures made against a government funded
candidate or in favor of a privately funded opponent.  This action neutralizes the
exercise of fundamental free speech rights of the independent speaker who
disfavors the government funded candidate, and has a chilling effect on the future
exercise thereof.

65.     Political messages in the second category, statements that favor a
government funded candidate, will only be matched or neutralized when that
candidate has a government funded opponent.  But the third category of political
messages, those brought forward by independent speakers who oppose a privately
funded candidate, are not regulated, matched, neutralized, or limited in any way.

66.     Moreover, in the event that supporters of the privately funded candidate wish to exercise their First Amendment rights by responding to such an attack, they will face two difficulties.  First, they cannot coordinate their activity with the privately funded candidate they support, because the VAA treats coordinated expenditures as contributions subject to limit.  Second, their speech will trigger the release of matching funds directly to the government funded candidate they oppose, who, unlike his privately funded counterpart, is then free to control how that money is spent.

67.     This threatened harm has a chilling effect on the fundamental free speech and free association rights of independent speakers who favor privately funded candidates with government funded opponents.

68.     The right of independent groups like NMER PAC to speak during political campaigns is a fundamental right under the First Amendment to the U.S. Constitution.  Any law that singles out their political speech for disparate treatment must withstand strict scrutiny and the VAA does not.

## COUNT IV
## (EQUAL PROTECTION-CANDIDATES)

69.     Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

70.     The Fourteenth Amendment to the U.S. Constitution guarantees Plaintiffs the right to enjoy the equal protection of laws.

71.    The VAA create two classifications of candidates for public office in state elections: those who participate in the government funded election system by accepting government financing, and those who do not participate in the system, choosing instead to run privately supported campaigns.  These provisions then treat candidates differently with respect to independent expenditures or contributions made on  their behalf, based solely on their status as a government or privately funded candidate.

72.    The VAA and any and all rules promulgated in furtherance thereof, create two classifications of candidates for public office: those who participate in the government funded election system by accepting government financing, and those who do not participate in the system, choosing instead to run a privately supported campaign.

73.    These provisions then treat these candidates differently with respect to contribution limits and campaign finance reporting requirements, based solely on their status as a government funded or privately funded candidate.

74.    The right of privately supported candidates for public office to speak during political campaigns without having involuntary limitations placed on their expenditures, without being coerced into participating in public campaign financing, and without fear of being penalized for having refused government subsidies, is a fundamental right under the First Amendment to the U.S.

Constitution. Any regulation or any administrative rules promulgated in furtherance thereof that single out privately funded candidates for disparate treatment must withstand strict scrutiny and the VAA does not.

## COUNT V
## (ENTITLEMENT TO DECLARATORY RELIEF)

75.   Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

76.   For reasons including but not limited to those stated in this Complaint, an actual dispute exists between Plaintiffs and Defendants, which parties have genuine and opposing interests, which interests are direct and substantial, and of which a judicial determination will be final and conclusive.

77.   Plaintiffs are therefore entitled to a declaratory judgment that Defendant's actions are unconstitutional, as well as such other and further relief as may follow from entry of such a declaratory judgment

## COUNT VI
## (ENTITLEMENT TO INJUNCTIVE RELIEF)

78.   Plaintiffs incorporate and reallege each and every allegation contained in Paragraphs of this Complaint as if set forth fully herein.

79.    For reasons including but not limited to those stated in this Complaint, as a direct and proximate result of Defendants' actions against Plaintiffs.

80.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights. Plaintiffs are, therefore, entitled to a preliminary and permanent injunction prohibiting Defendants from committing the above-described violations of their constitutional rights, as well as such other and further relief as may follow from entry of such injunctive relief.

Respectfully submitted,

THE BARNETT LAW FIRM, P.A.

By: */s/ Colin Hunter*
     COLIN L. HUNTER
1905 Wyoming Blvd. NE
Albuquerque, New Mexico  87112
Tele:   (505) 275-3200
Fax:    (505) 275-3837
colin@theblf.com