# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

Civil Action No. 12-cv-00110-DME-ACT

DAN DOLAN, a citizen of the State of New Mexico,
NEW MEXICANS FOR AN ECONOMIC RECOVERY PAC,
a candidate support or opposition committee and independent expenditures committee,
BERNALILLO COUNTY REPUBLICAN PARTY,

       Plaintiffs,

AL PARK,

       Intervenor – Plaintiff,

v.

DIANNA J. DURAN, in her official capacity as New Mexico Secretary of State,

       Defendant,

STATE OF NEW MEXICO,
VICTOR S. LOPEZ, and
CYNTHIA B. HALL,

       Intervenors – Defendants.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

The New Mexico Voter Action Act ("VAA") gives candidates for New Mexico's
Public Regulation Commission ("PRC"), its Supreme Court, and its Court of Appeals the
choice of financing their election campaigns with public funds if they agree not to accept
funding from other sources.  At issue here is a section of the VAA that provides a
publicly funded candidate with funds to match the spending of his or her electoral

opponents and opposing independent groups.  N.M. Stat. Ann. § 1-19A-14.  The United

States Supreme Court struck down a similar Arizona matching-funds provision because it

impermissibly burdened the constitutionally protected political speech of the other

candidates and independent groups.  See Ariz. Free Enter. Club's Freedom Club PAC v.

Bennett, 131 S. Ct. 2806 (2011) ("Arizona Free Enterprise Club").  The reasoning of

Arizona Free Enterprise Club applies here as well.  Therefore, the Court grants Plaintiffs'

motion for summary judgment (Doc. 42), declares that the VAA's matching-funds

provision, N.M. Stat. Ann. § 1-19A-14, impermissibly burdens political speech protected

under the First Amendment, and enjoins the enforcement of that provision.

## I.  BACKGROUND

### A.  The Voter Action Act, N.M. Stat. Ann. §§ 1-19A-1 through 1-19A-17

#### 1.  Generally

The New Mexico legislature enacted the VAA in 2003, applying it to candidates

for the PRC.  See Montoya v. Herrera, 276 P.3d 952, 954 (N.M. 2012).  In 2007, the state

legislature extended the VAA to candidates in partisan elections for New Mexico's

Supreme Court and Court of Appeals.  See id. at 954-55.

A candidate for one of these offices is eligible for public funding under the VAA

if the candidate has not accepted more than $500 in contributions and has not spent more

than $500 on his or her campaign before declaring an intent to be publicly funded.  N.M.

Stat. Ann. §§ 1-19A-2(D), 1-19A-3(A), (C).  A candidate who declares an intent to be

publicly funded must then collect $5 contributions from a specific number of eligible

registered voters.  Id. §§ 1-19A-2(H), 1-19A-3(B), 1-19A-4.  The candidate can raise a

limited amount of "seed money" to fund the collection of these $5 contributions.  Id.
§§ 1-19A-2(K), 1-19A-5.

Once a candidate collects the required number of $5 contributions, the candidate
turns those funds over to the Secretary of State, along with documentation of compliance
with all other requirements for public funding.  Id. §§ 1-19A-6(A), 1-19A-9(C).  If an
eligible candidate meets these requirements, the Secretary will then certify that candidate
to be publicly funded, id. § 1-19A-6(A), (B), and disburse to the candidate an initial
outlay of public funds in an amount calculated according to a formula provided in the
VAA, id. §§ 1-19A-12, 1-19A-13.  The candidate can only use these funds for
"campaign-related purposes in the election cycle in which the money [i]s distributed."
Id. § 1-19A-7(A).  Further, the candidate must limit campaign expenditures and debt to
the amount of public funds received from the Secretary, and must further agree not to
accept contributions or loans from any other source.  Id. § 1-19A-7(C).  A candidate may,
however, accept a limited contribution from a political party.  Id. §§ 1-19A-7(C), 1-19A-
8.  A publicly funded candidate must report all campaign expenditures to the Secretary of
State, id. § 1-19A-9(D), and must return any unused public funds to the Secretary after
the election, id. 1-19A-7(B), (D), (E).

### 2.  The VAA's matching-funds provision

At issue here is the VAA's matching-funds provision, N.M. Stat. Ann. § 1-19A-
14, which states the following:

> When a certified or noncertified candidate has one or more opponents who
> are certified candidates and the candidate's campaign finance report or
> group of reports shows that the sum of the candidate's expenditures and

obligations made, or funds raised or borrowed, whichever is greater, alone or in conjunction with expenditures made independently of the candidate to influence the election on behalf of the candidate, exceeds the amount distributed to an opposing certified candidate, the secretary shall issue immediately to any opposing certified candidate an additional amount equivalent to the excess amount reported by the opposing candidate. Total matching funds to a certified candidate in an election are limited to twice the amount originally distributed to that candidate pursuant to Section 1-19A-13 NMSA 1978.

Matching funds, then, are triggered when a publicly funded candidate's opponent(s) raises or spends more than the amount of the Secretary's initial outlay of state funds to the publicly financed candidate. Once these matching funds are triggered, the Secretary disburses to the publicly funded candidate additional public money sufficient to match the amount raised or spent by his or her opponent(s). A publicly funded candidate is also entitled to public funds sufficient to match amounts spent by independent groups in support of the candidate's opponent(s). These matching funds are capped at two times the amount of the Secretary's initial outlay of state money to the publicly funded candidate.

In order to implement this matching-funds provision, the VAA requires privately funded candidates and relevant independent groups to report their expenditures periodically to the Secretary of State. Id. § 1-19A-9(E), (F).

## B. Arizona Free Enterprise Club

The United States Supreme Court struck down a similar Arizona matching-funds provision. See Ariz. Free Enter. Club, 131 S. Ct. at 2813-15. However, unlike the New Mexico VAA, the Arizona statute provided public funding for candidates running in statewide elections, but did not fund judicial elections, id. at 2813, which in Arizona are

non-partisan retention elections, see Ariz. Const. art. VI, § 38.  The Supreme Court

concluded that Arizona's matching-funds provision "impose[d] an unprecedented

penalty," Ariz. Free Enter. Club, 131 S. Ct. at 2818, on the protected political speech of

privately funded candidates and those independent political groups opposing a publicly

funded candidate by providing almost dollar-for-dollar matching funds to the publicly

funded candidate(s) whenever a privately funded candidate or opposing independent

group spent money to speak politically, id. at 2813, 2817-20.  Concluding Arizona's

interest in preventing corruption, or its appearance, did not justify such a substantial

burden on protected speech, the Court struck down the Arizona matching-funds provision

as impermissibly burdening political speech protected by the First Amendment.  See id.

at 2813, 2824-26.

## II.  THIS ACTION

        In this case, Plaintiffs are 1) Dan Dolan, a citizen who alleges that his protected

political speech was diluted when he made a campaign contribution to a privately funded

candidate whose publicly funded opponents in turn received matching public funds;

2) New Mexicans for an Economic Recovery PAC, an independent political committee

that did not spend money in opposition to publicly funded candidates during the 2012

primary elections in order to avoid triggering matching funds for those candidates; and

3) the Bernalillo County Republican Party, which accepts contributions and expends

funds in support of candidates, but which might curtail its support of privately funded

candidates and its opposition to publicly funded candidates in order to avoid triggering

matching funds for a publicly financed candidate.  Al Park, a privately funded candidate

who ran in the 2012 Democratic primary election for the District 1 PRC seat, intervened

on the side of Plaintiffs.  Park was defeated in the primary by a publicly funded opponent.

The Court will refer to these parties collectively as Plaintiffs.[1]

Plaintiffs initiated this action under 42 U.S.C. § 1983, suing the New Mexico

Secretary of State, Dianna J. Duran, in her official capacity, alleging that the VAA's

matching-funds provision is unconstitutional.  It is the Secretary of State who administers

the VAA.  See State v. Block, 263 P.3d 940, 942 (N.M. Ct. App. 2011) (citing N.M. Stat.

Ann. § 1-19A-15(A)).

When the Secretary of State agreed with Plaintiffs that the matching-funds

provision was unconstitutional, the State of New Mexico intervened as a Defendant in

order to defend the constitutionality of the challenged matching-funds provision.  In

addition, Victor S. Lopez, a publicly funded candidate who ran in the 2012 Democratic

primary election for the New Mexico Court of Appeals, and Cynthia B. Hall, a publicly

funded candidate in the 2012 Democratic primary for PRC District 1, intervened on the

State's side.[2]

The Court denied Plaintiffs' motion for a temporary restraining order, filed just a

_____

[1] The Court is satisfied that at least some of the named Plaintiffs have standing to pursue this action.  See Green Party of Conn. v. Garfield, 616 F.3d 213, 242-43 (2d Cir. 2010); see also Colo. Right to Life Comm., Inc. v. Coffman, 498 F.3d 1137, 1145 n.6 (10th Cir. 2007) (holding "self-censorship through the chilling of protected First Amendment activity" was a sufficient injury to establish standing to challenge the constitutionality of election laws causing the chilling); Republican Party of N.M. v. King, --- F. Supp. 2d ---, 2012 WL 219422, at *3 (D. N.M. Jan. 5, 2012) (same).  Intervenor-Plaintiff Park also has standing, though he need not establish his own standing in order to intervene, so long as he is aligned with a party that has standing, see Stewart v. Kempthorne, 554 F.3d 1245, 1253 (10th Cir. 2009).

[2] Both Victor Lopez and Cynthia Hall were defeated in the primary election.

few days before the primary election, but set this case for expedited consideration in light of the upcoming general election.  This matter now comes before the Court on Plaintiffs' motion for summary judgment (Doc. 42), which has been fully briefed and argued to the Court.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if Plaintiffs "show[] that there is no genuine dispute as to any material fact and [they] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Although the Court will review any relevant evidence in the light most favorable to New Mexico and the Intervenor-Defendants, as the non-moving parties, see Jaramillo v. Adams Cnty. Sch. Dist. 14, 680 F.3d 1267, 1268 (10th Cir. 2012), there can be no genuine factual dispute requiring a trial unless there is sufficient evidence before the Court on which a reasonable jury could return a verdict in Defendants' favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Attorneys' arguments and assertions are not evidence and, thus, "cannot provide a proper basis to deny summary judgment."  Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1061 (10th Cir. 2009).

### IV.  ANALYSIS

The parties agree, and there can be no question after Arizona Free Enterprise Club, that the VAA's matching-funds provision substantially burdens the protected political speech of privately financed candidates and independent groups supporting a publicly funded candidate's opponents.  See 131 S. Ct. at 2816-24.  Therefore, New Mexico must establish that the VAA's matching-funds provision "furthers a compelling interest and is

narrowly tailored to achieve that interest." Id. at 2817 (internal quotation marks omitted); see also id. at 2820, 2824.

New Mexico asserts that its matching-funds provision serves the State's interest in preventing corruption or its appearance. The Supreme Court has previously recognized that such an interest can be a compelling state interest. See Fed. Election Comm'n v. Nat'l Conservative Political Action Comm., 470 U.S. 480, 496-97 (1985) ("[P]reventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances."); see also Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n, 518 U.S. 604, 609 (1996) (plurality opinion); id. at 641 (Thomas, J., concurring in part and dissenting in part).[3]

In Arizona Free Enterprise Club, however, the Supreme Court concluded that the State's interest in preventing corruption or its appearance was not sufficient to justify the substantial burden that Arizona's matching-funds provision imposed on protected political speech. See 131 S. Ct. at 2826-28. Arizona Free Enterprise Club faulted Arizona's statute for triggering matching funds based on election expenditures that did not address the State's interest in preventing corruption. See id.

More specifically, Arizona, like New Mexico, triggered matching funds in part on a privately funded candidate's expenditure of his or her own funds. See id. at 2826. But

---

[3] While preventing corruption or its appearance is a sufficient state interest to justify contribution limitations and disclosure requirements, see Buckley v. Valeo, 424 U.S. 1, 23-38, 60-68 (1976), it has never been held sufficiently important to justify restrictions on independent election expenditures, see id. at 45-48.

"[b]urdening a candidate's expenditure of his own funds on his own campaign does not further the State's anticorruption interest." Id. Instead, "'reliance on personal funds reduces the threat of corruption' because 'the use of personal funds reduces the candidate's dependence on outside contributions and thereby counteracts the coercive pressures and attendant risks of abuse' of money in politics." Id. (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 740-41 (2008), and Buckley v. Valeo, 424 U.S. 1, 53 (1976)).

Like New Mexico, Arizona also triggered its matching funds based on expenditures by independent groups. See id. 2826-27. But targeting those expenditures similarly did not further Arizona's anti-corruption interest because,

> [b]y definition, an independent expenditure is political speech presented to the electorate that is not coordinated with a candidate. The candidate-funding circuit is broken. The separation between candidates and independent expenditure groups negates the possibility that independent expenditures will result in the sort of quid pro quo corruption with which our case law is concerned.

Id. at 2826-27 (internal quotation marks omitted; citing Citizens United v. Fed. Election Comm'n, 558 U.S. ---, 130 S. Ct. 876, 909-11 (2010)); see also Buckley, 424 U.S. at 45-48.

New Mexico's matching-funds provision suffers from these same constitutional infirmities. New Mexico also triggers its matching funds, in part, based on a privately funded candidate's expenditure of the candidate's own money and on expenditures by independent groups supporting a publicly funded candidate's opponents. But Arizona Free Enterprise Club concluded that targeting these expenditures does not further the

State's interest in preventing corruption or its appearance.  See 131 S. Ct. at 2826-27.

New Mexico and Intervenor-Defendants argue that the State's interest here in preventing corruption, or its appearance, in judicial and PRC elections is stronger than Arizona's interest in preventing corruption in its statewide elections generally.  Even accepting that as true, it does not change the problem identified in Arizona Free Enterprise Club, id. at 2826-27, that triggering matching funds based on a candidate's expenditure of his or her own funds or on the expenditures of independent groups does not further an anti-corruption interest.[4]  Further, the record developed before this Court does not establish any greater connection between targeting these particular expenditures and preventing corruption or its appearance than what the Court considered in Arizona Free Enterprise Club.

For the foregoing reasons, then, the Court, pursuant to Arizona Free Enterprise Club, concludes that New Mexico's matching-funds provision impermissibly burdens political speech protected by the First Amendment and is, therefore, unconstitutional.

## V.  SEVERABILITY OF MATCHING-FUNDS PROVISION

---

[4] This conclusion does not leave New Mexico unable to preserve the integrity of these elections.  New Mexico can uphold the integrity of its judicial elections using different means, such as requiring a judge's recusal in cases involving a contributor to the judge's campaign, see Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), and requiring judicial candidates to follow the Code of Judicial Conduct in soliciting campaign contributions, N.M. Stat. Ann. § 1-19-29.1(B).  Similarly, New Mexico has addressed the integrity of its PRC elections by prohibiting candidates for the PRC  from soliciting contributions from regulated entities.  See id. § 1-19-34.2.  New Mexico also prevents corruption by limiting campaign contributions generally.  See id. § 1-19-34.7.  See generally Ariz. Free Enter. Club, 131 S. Ct. at 2827 (noting that "'[t]he interest in alleviating the corrupting influence of large contributions is served by . . . contribution limitations'") (quoting Buckley, 424 U.S. at 55).

Anticipating that the Court might strike down New Mexico's matching-funds provision as unconstitutional, in light of its similarity to the Arizona matching-funds provision struck down in Arizona Free Enterprise Club, the parties here have argued that portions of the matching-funds provision can be salvaged or, alternatively, that the remainder of New Mexico's VAA should remain intact and enforceable.

The parties' assertions present matters of severability, which are governed by New Mexico law.  See Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1195 (10th Cir. 2000).  Severability, under New Mexico law, is a question of legislative intent:

> [A] part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

State v. Frawley, 172 P.3d 144, 155 (N.M. 2007) (quotation omitted); see also N.M. Stat. Ann. § 12-2A-9.[5]

The parties' contentions here present four severability questions.  The first two questions are 1) whether part of the matching-funds provision can be salvaged by eliminating its application to PRC elections, but leaving intact its application to judicial elections; and 2) whether part of the matching-funds provision can be salvaged instead by

---

[5] Section 12-2A-9 provides that, "[i]f a provision of a statute or rule or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute or rule that can be given effect without the invalid provision or application, and to this end the provisions of the statute or rule are severable."

leaving intact just the part of the matching-funds provision that triggers matching funds based on a candidate's expenditure of campaign contributions he or she raised.  As explained in greater detail below, portions of the matching-funds cannot be saved in either way and, therefore, the matching-funds provision must be stricken in its entirety.

The remaining severability questions presented are 3) whether the matching-funds provision can be severed from the rest of the VAA, leaving the rest of the Act intact and enforceable; and 4) whether the VAA's disclosure and reporting requirements designed to implement the matching-funds provision should be stricken as unconstitutional and also severed from the otherwise enforceable VAA.  As explained below, the matching-funds provision can be severed, in its entirety, from the rest of the VAA, leaving the remainder of the VAA operable and enforceable.  Nor is there a need to strike down any of the VAA's disclosure and reporting requirements.  So they, too, remain operable and enforceable.

## A.  The matching-funds provision cannot be salvaged by applying it only to judicial elections

New Mexico and the Intervenor-Defendants acknowledge that the Supreme Court, in Arizona Free Enterprise Club, struck down Arizona's matching-funds provision as it applied to Arizona's corporation commission, a government body similar to New Mexico's PRC.  In light of that, these Defendants argue that, even if this Court cannot save the matching-funds provision as it pertains to PRC elections, the Court should uphold the matching-funds provision at least as it applies to judicial elections because of the State's "acute" interest in preserving the integrity of the judiciary.  Defendants bolster

this argument by asserting the interests of litigants in a fair court system.  But, as previously addressed in greater detail, <u>supra</u> Section IV, the constitutional problems with New Mexico's matching-funds provision occur in both judicial and PRC elections. Therefore, the matching-funds provision cannot be saved by limiting its application to only judicial elections.

**B.  The matching-funds provision cannot be salvaged by triggering matching funds based solely on a candidate's expenditure of campaign contributions he or she has raised**

Based on the reasoning in <u>Arizona Free Enterprise Club</u>, Defendant-Intervenor Lopez suggests that part of New Mexico's matching-funds provision can be saved if this Court severs just the portion of the statute that triggers matching funds based on the expenditures of independent groups supporting a publicly financed candidate's opponent(s) and on a privately funded candidate's expenditure of his or her own funds. Lopez suggests, then, leaving intact the matching-funds provision insofar as that statute triggers matching funds based only on a candidate's expenditure of campaign funds he or she has raised.

Like Arizona, New Mexico triggers matching funds based on the aggregation of at least three types of campaign expenditures: 1) those of certain independent groups; 2) those made by a privately funded candidate from his or her own funds; and 3) those made from campaign contributions raised by a privately funded candidate.  <u>Arizona Free Enterprise Club</u> concluded that triggering matching funds based on the first two of these three types of expenditures does not serve the state's interest in preventing corruption and its appearance.  <u>See</u> 131 S. Ct. at 2826-27; <u>see also</u> <u>id.</u> at 2827 (noting that "<u>much</u> of the

speech burdened by the [Arizona] matching funds provision does not, under our precedents, pose a danger of corruption" (emphasis added)).  But Arizona Free Enterprise Club did not address the third type of expenditure, made by a privately funded candidate from campaign contributions he or she has raised.[6]

 The Court need not decide here whether such a pared-down version of New Mexico's matching-funds provision would pass constitutional muster, however, because the Court declines to sever just these portions of the VAA's matching-funds provision suggested by Intervenor-Defendant Lopez.  As enacted, New Mexico's matching-funds provision triggered matching-funds based on a formula that aggregated these three types of expenditures.  The Court, therefore, cannot excise two of the three types of expenditures on which the legislature based the triggering formula "without impairing the force and effect of the remaining parts" of the matching-funds provision.  Frawley, 172 P.3d at 155 (quotation omitted).  Moreover, severing two-thirds of the legislature's triggering formula would not be consistent with the New Mexico legislature's objective in enacting the VAA's matching-funds provision.  See id.  For these reasons, therefore, the Court declines to sever and strike down only the portion of the matching-funds provision that triggers funding based on expenditures made by independent groups and by a candidate from his or her own funds.  See City of Albuquerque v. Cauwels & Davis, Mgmt. Co., 632 P.2d 729, 731 (N.M. 1981) (striking entire ordinance where

---

[6]  Prior to Arizona Free Enterprise Club, however, the Supreme Court held that restricting a candidate's expenditure of campaign funds could not be justified by the government's interest in preventing corruption.  See Buckley, 424 U.S. at 54-58.

unconstitutional portion was "inextricably intertwined" with valid parts such that separating them would "substantially affect[]" the ordinance).

## C. The matching-funds provision, in its entirety, can be severed from the rest of the VAA, leaving the remainder of the Act intact and enforceable

For the foregoing reasons, the Court declares New Mexico's matching-funds provision unconstitutional in its entirety.  In light of that, the parties concede, and the Court agrees, that the matching-funds provision can and should be severed from the remainder of the VAA, leaving the rest of the Act intact and enforceable.  It is not evident to the Court or the parties that, had the New Mexico legislature known that the VAA's matching-funds provision would not be enforceable, the legislature would have opted to have no VAA at all.  Instead, when the New Mexico legislature first enacted the VAA, in 2003, the legislature expressly stated that, "[i]f any part of or application of the Voter Action Act is held invalid, the remainder of its provisions or its application to other situations or persons shall not be affected."  2003 N. Mex. Laws Ch. 14 (H.B. 420), § 22. The legislature, then, intended that, should part of the VAA be unenforceable, the remaining portions of the VAA should remain intact and operable.  And, although when it later extended the VAA to judicial elections, the New Mexico legislature did not again include a severability provision, there is no suggestion that the legislature had at that time changed its mind about making the VAA's provisions severable.  See Bradbury & Stamm Constr. Co. v. Bureau of Revenue, 372 P.2d 808, 812-14 (N.M. 1962).  To the contrary, the legislature may very well have assumed that it did not need to reiterate that provisions of the VAA were severable, particularly in light of N.M. Stat. Ann. § 12-2A-9, which

provides for severability of New Mexico statutes generally.  For these reasons, then, the Court concludes that the New Mexico legislature, had it known that the VAA's matching-funds provision was unenforceable, would not have wanted the Court to strike down the entire VAA.

Moreover, there is no practical concern about severing the matching-funds provision and leaving the rest of the VAA intact.  The remainder of the VAA can remain operable and function independently from the stricken matching-funds provision. Further, leaving the rest of the VAA intact serves the New Mexico legislature's purpose of offering public financing to candidates for the PRC, the Supreme Court, and the Court of Appeals.  For these reasons, then, the Court severs the unenforceable matching-funds provision, in its entirety, but leaves the rest of the VAA intact and enforceable.

**D. The Court need not strike the VAA's disclosure and reporting requirements**

In their complaint and summary judgment motion, Plaintiffs challenged the constitutionality of, not only the matching-funds provision, but also the reporting and disclosure requirements that the VAA imposes on privately funded candidates and independent groups opposing publicly funded candidates in order to implement the matching-funds provision.  Nevertheless, at the hearing on their summary judgment motion, Plaintiffs asserted that they no longer seek to have these reporting and disclosure requirements set aside.  And it is not evident that the New Mexico legislature would have chosen to forego these disclosure and reporting requirements, even if the legislature had known that the matching-funds provision was unenforceable.  Moreover, the VAA's reporting and disclosure requirements serve to inform the electorate, in addition to being

16

designed to aid in the implementation of the now-stricken matching-funds provision.  See Buckley, 424 U.S. at 66-67.  And the VAA's disclosure and reporting requirements are no more onerous than similar requirements imposed on candidates and independent groups by other provisions of New Mexico's election laws that remain unaffected by the Court's ruling in this case.  See N.M. Stat. Ann. §§ 1-19-25 through 1-19-37.  Finally, as a practical matter, the VAA's disclosure and reporting requirements can continue to operate, even without the matching-funds provision.  Thus, in an effort to invalidate only the portion of the act that is unconstitutional, the Court declines to sever and strike down any of the VAA's disclosure and reporting requirements.

**E.  Conclusion as to severability**

In summary, the Court concludes that the VAA's matching-funds provision cannot be salvaged by striking only portions of that provision.  Therefore, the matching-funds provision, N.M. Stat. Ann. § 1-19A-14, in its entirety, is unconstitutional and, thus, unenforceable.  But the Court can and will sever the matching-funds provision from the rest of the VAA intact, leaving the remainder of the Act operable and enforceable.  In doing so, the Court specifically leaves intact all of the VAA's disclosure and reporting provisions.

## VI.  CONCLUSION

For the foregoing reasons, the Court declares the VAA's matching-funds provision to be unconstitutional and enjoins its enforcement.  The Court directs the Clerk to enter judgment accordingly.  The Court will consider a timely filed and properly presented motion for attorneys' fees under 42 U.S.C. § 1988.

17

Dated this ___25th___ day of _____July___, 2012.

BY THE COURT:

*s/ David M. Ebel*

_____

U. S. CIRCUIT COURT JUDGE